IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARQUESE GIVENS, | § | |
| | § | No. 309, 2016 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID 1508006714 (N) |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: March 16, 2017
Decided: June 6, 2017

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 6th day of June 2017, upon consideration of the appellant's Supreme Court Rule 26(c) brief, his attorney's motion to withdraw, and the State's response thereto, it appears to the Court that:

(1) In January 2016, a Superior Court jury convicted the appellant, Marquese Givens, of Possession of a Firearm by a Person Prohibited and Possession of Ammunition by a Person Prohibited. After denying his post-trial motion for a judgment of acquittal, the Superior Court sentenced Givens to a total period of twenty-three years at Level V incarceration to be suspended after serving five years in prison for decreasing levels of supervision. This is Givens' direct appeal.

(2)    Givens' counsel on appeal has filed a brief and a motion to withdraw under Rule 26(c). Givens' counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. By letter, Givens' attorney informed him of the provisions of Rule 26(c) and provided Givens with a copy of the motion to withdraw and the accompanying brief. Givens also was informed of his right to supplement his attorney's presentation.

(3)    Givens has raised four claims for the Court to consider. First, he contends that the trial court erred in allowing the State, during its rebuttal presentation, to introduce the out-of-court statement of a previously-excused defense witness. Second, he contends that the trial court erred in denying his post-trial motion for a judgment of acquittal. Third, he contends that the prosecutor engaged in multiple instances of misconduct. Finally, he argues that the trial judge engaged in misconduct.

(4)    The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold: (a) this Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (b) this Court must conduct its own review of the record and

2

determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[1]

(5) The State's case-in-chief at trial was presented primarily through the testimony of the arresting police officer, Corporal Danny Silva. Silva testified that, on the evening of August 8, 2015, Wilmington police were dispatched to Third and North Franklin Streets in the City of Wilmington. Silva and his partner arrived in their patrol vehicle. Other officers were already on the scene tending to a man with a head wound. Silva observed a distraught woman walking up and down the sidewalk, yelling at people on the opposite side of the street. As he approached the woman, she immediately pointed to a parked car across the street and told Silva that there was a gun in the car.[2] Silva shined his flashlight into the car and saw part of a gun sticking out from under the driver's seat.

(6) Silva checked the vehicle's registration and learned that it belonged to Givens, whose registered address was not in the neighborhood. After asking a large group of people nearby if anybody owned the car and

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

[2] The State called the woman as a witness at trial. She testified that she had been drunk that night and did not recall much other than fighting with the father of her child and some other unidentified people who tried to intervene in their argument. She testified that she did not recall ever speaking to Silva, although she did recall seeing a man in the driver's seat of a parked car near where Silva had testified that Givens' car had been parked. She could not offer any details about the car or the person in the driver's seat.

3

receiving no answer, Silva called for a tow truck. While he and his partner waited for the tow truck, Silva testified that he was approached by a man, Givens, who asked what they were doing with his car. Silva testified that he asked Givens if he knew what was in the car and Givens immediately responded, "there's a gun." Silva testified that, after making that statement, he patted Givens down and read him his *Miranda* rights. Silva testified that Givens told him that the gun belonged to his girlfriend. He further testified that Givens told him that he had driven to the area with his girlfriend and, upon their arrival, Givens was involved in an altercation and his girlfriend had removed the gun from the car and was waving it in the air. When Silva asked Givens for his girlfriend's name, Givens refused to answer and stopped cooperating.

(7)     Silva's partner also testified at trial. He confirmed Silva's testimony that Givens told Silva that he had driven to that location, that he knew there was a gun in the car, and that the gun belonged to his girlfriend. Silva's partner also confirmed that Silva patted Givens down and read him his *Miranda* rights. After the car was towed to a police lot, Silva obtained a search warrant. Other officers searched Givens' car and retrieved the gun. Testing on the gun revealed that it was fully loaded. There were no fingerprints recovered from the gun.

4

(8) The defense called three witnesses, who were two of Givens' friends and his girlfriend, Starasia Gregory.[3] All three testified that they and Givens had carpooled together that morning in the female friend's car to a local park. After spending several hours there, the two couples then went together in the afternoon to a friend's child's birthday party. While at the party, Givens received a call about a family matter that required him to pick up his young nephew at the police station. The female friend drove Givens and dropped him off at the station. She went back to the party and picked up the other two and returned to the male friend's house at Third and Franklin Streets. Givens walked from the police station and met them there.

(9) While they were inside playing cards, they heard a commotion in the street and went outside to see what was happening. When they saw officers looking at Givens' car, the four of them approached the vehicle. Once Givens' identified the vehicle as his, the officers immediately put Givens in handcuffs and did not read him *Miranda* rights. All three denied hearing Givens tell Silva that he had been driving the car and that he knew there was a gun it.

(10) Gregory further testified that Givens had not driven at all that day. She stated that after returning from the birthday party to Third and

---

[3] The Superior Court appointed counsel to represent Gregory. Gregory testified against the advice of her appointed counsel.

5

Franklin Streets, while Givens was dealing with his family situation, she drove the car back to her apartment to get money for dinner. While she was in the apartment, she retrieved the gun from its lockbox with the intention of taking it to a friend later who was going to show her how to clean it and fix the sights. She put the gun under the seat. She did not tell Givens that the gun was in the car when she saw him later that night.

(11) Givens also testified at trial.[4] He testified that he had not driven his car at all that day and that he never told Silva that he had been driving. He denied telling Silva that he had been involved in an altercation or that Gregory had been waving a gun in the air. He testified that he knew Gregory owned a gun, but he had no idea that she had put it in his car. He further denied that Silva had read him his *Miranda* rights.

(12) After the defense rested, the State recalled Gregory to question her about a prior out-of-court statement that she had made to an investigator from the Attorney General's office. After consulting with her appointed counsel, Gregory agreed to testify on rebuttal without a subpoena. Over defense counsel's objection, a taped recording of Gregory's telephone conversation with the investigator was played for the jury. During the conversation, Gregory told the investigator that Givens had been driving the

---

[4] Givens acknowledged on the stand that he was a convicted felon.

car earlier in the day. She also told the investigator, however, that she had driven the car later, without Givens, and had put the gun in the car at that time without his knowledge. On the stand, Gregory testified that she had been trying to deal with her daughter while she was on the phone with the investigator and that she was simply incorrect when she said that Givens had driven the car.

(13) The jury convicted Givens of possession of a firearm and possession of ammunition by a person prohibited. Givens filed a post-trial motion for a judgment of acquittal, which the Superior Court denied. After sentencing, Givens filed this appeal.

(14) Givens' first point on appeal is that the Superior Court erred in allowing Gregory's out-of-court statement into evidence. According to Givens, Gregory's statement was inadmissible under 11 *Del. C.* § 3507 because the State failed to introduce it before the conclusion of Gregory's direct examination and because the State failed to establish that the statement was voluntary. Although the State addresses and rejects the merits of Givens' § 3507 claim in its motion to affirm, we do not need to analyze this claim on appeal. The trial record reflects that the prosecutor did not offer Gregory's out-of-court statement as independent, substantive evidence under § 3507, but instead offered it under Delaware Rule of Evidence 613

7

solely to impeach Gregory's testimony that Givens' had not driven his car at any time on August 8, 2015.[5] Gregory was given the opportunity to explain her prior inconsistent statement, and defense counsel was permitted to question her about the statement.[6] Under the circumstances, we find no error in the Superior Court's admission of Gregory's statement into evidence.

(15) Givens next contends that the Superior Court erred in denying his post-trial motion for a judgment of acquittal because there was insufficient evidence to prove Givens had constructive possession of the gun found under the driver's seat of his car. This Court reviews the denial of a motion for a judgment of acquittal *de novo* to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt.[7] In order to prove constructive possession of a gun by a person prohibited, the State is required to prove that the defendant: (i) knew the location of the gun; (ii) had the ability to exercise dominion and control over the gun; and (iii) intended to exercise dominion and control over the gun either directly or

---

[5] *See Wyche v. State*, 3 A.2d 257, 262 (Del. 2010)

[6] *See* Del. R. Evid. 613(b).

[7] *Pardo v. State*, ___ A.3d ___, 2017 WL 1491884, *9 (Del. Apr. 26, 2017).

8

through another person.[8] Constructive possession does not require the State to prove that the gun was accessible at the specific time of the arrest,[9] and circumstantial evidence may be sufficient to meet the State's burden of proof.[10]

(16) Viewing the evidence in the light most favorable to the State, we find no error in the Superior Court's denial of Givens' motion for a judgment of acquittal. In this case, Silva testified that Givens told him that he owned the car, had driven the car to his friend's neighborhood, and knew that there was a gun in the car, which was found under the driver's seat. Although the defense presented witnesses to rebut Silva's testimony, it was the jury's responsibility to assess the credibility of the witnesses, to resolve any conflicts in the testimony, and to draw any inferences from the proven facts.[11] We conclude that a rational trier of fact could find that Givens had the ability and the intent to exercise dominion and control over the loaded gun that was found under the driver's seat of his car.[12] We find no merit to Givens' second claim on appeal.

---

[8] *Eley v. State*, 2010 WL 5395787, *3 (Del. Dec. 28, 2010); *Lecates v. State*, 987 A.2d 413, 426 (Del. 2009).

[9] *Lecates v. State*, 987 A.2d at 421.

[10] *Id.* at 426.

[11] *Poon v. State*, 880 A.2d 236, 238 (Del. 2005).

[12] *Lecates v. State*, 987 A.3d 413, 426 (Del. 2009).

(17) Givens next contends that the prosecutor engaged in multiple instances of misconduct. He contends that the prosecutor threatened several times to reindict him, adding weapon and assault charges to the new indictment. Givens, however, points to nothing in the record to support this claim as a factual matter. Moreover, as a legal matter, he does not cite to any authority to support his claim that the alleged statements were improper. In fact, Givens was not reindicted. We find no basis to consider this unsubstantiated claim further.

(18) Givens also contends that the prosecutor's closing and rebuttal arguments reflected misconduct because the prosecutor did not point to any evidence to reflect Givens' intention to exercise control over the gun in his car and because the prosecutor mischaracterized the evidence when he argued that Givens stated "that is my gun." Neither of these claims was raised below. Thus, we review for plain error only.[13] Plain error exists when the error complained of is apparent on the face of the record and is so prejudicial to a defendant's substantial rights as to jeopardize the integrity and fairness of the trial.[14] The burden of persuasion is on the defendant to show prejudice.[15]

---

[13] Del. Supr. Ct. R. 8.

[14] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[15] *Brown v. State*, 897 A.2d 748, 753 (Del. 2006).

10

(19) We find no plain error in this case. In its instructions, the Superior Court properly informed the jurors that they were the sole triers of the facts and that the statements made by counsel in their opening and closing arguments were not evidence. To the extent the jurors' recollection of the testimony at trial disagreed with anything said by the lawyers, the Superior Court instructed the jurors to be guided entirely by their own recollection. Under the circumstances, even assuming that the prosecutor misstated Givens' testimony, we find no plain error requiring reversal on appeal.

(20) Givens final claim on appeal is that the trial judge engaged in misconduct by: (i) admitting Gregory's statement under 11 *Del. C.* § 3507; (ii) by making a pretrial request for a summary of the anticipated evidence; (iii) by failing, *sua sponte*, to conduct an evidentiary hearing on Givens' waiver of his *Miranda* rights; and (iv) by failing, *sua sponte*, to poll the jury after Givens alleged at the end of trial that Silva may have mouthed something to the jury.

(21) In order to prevail on a claim of judicial misconduct, a defendant must show that the trial judge's actions during the course of trial created "a pervasive climate of partiality and unfairness" that "could have

11

led the jury to a predisposition of guilt."[16] Givens' contentions reflect nothing more than his disagreement with the trial judge's rulings or alleged failures to take action *sua sponte*. Givens' does not allege "a pervasive climate of partiality and unfairness" by the trial judge sufficient to meet the stringent standard for reversing a verdict due to judicial misconduct.[17] We thus reject Givens' final claim on appeal.

(22) The Court has reviewed the record carefully and has concluded that Givens' appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Givens' counsel has made a conscientious effort to examine the record and the law and has properly determined that Givens could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

_____
Justice

---

[16] *Williams v. State*, 1997 WL 560894, *2 (Del. Sept. 2, 1997)
[17] *Id.*